**Mary MILLER, Plaintiff,**

v.

**FEDERAL EXPRESS CORP., Defendant.**

**No. 98–2290 D/V.**

United States District Court, W.D. Tennessee, Western Division.

June 24, 1999.

Donald A. Donati, James M. Allen, Donati & Associates, P.C., Memphis, TN, for Mary Miller, plaintiff.

James R. Mulroy, II, Mary Jane Palmer, Federal Express Corporation, Memphis, TN, Thomas H. Lawrence, Lewis Fisher Henderson & Claxton, Memphis, TN, for Federal Express Corporation, defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DONALD, District Judge.

Before the court is the April 2, 1999, motion for summary judgment on behalf of Defendant, Federal Express. Defendant filed the instant motion asserting three primary arguments. First, Plaintiff, Mary Miller's, claim of sex discrimination is beyond the scope of her charge of discrimination.[1] Second, Plaintiff failed to state a prima facie case of race discrimination and in the event that she did state a prima facie case, Defendant had a legitimate non-discriminatory reason for terminating Plaintiff, Third and finally, Plaintiff's claim arising under 42 U.S.C. § 1981 is time barred. For the reasons stated herein, Defendant's motion is **granted in part and denied in part.**

*FACTS*

Plaintiff began her tenure of employment with the Defendant on November 25, 1981. During the relevant time period, Plaintiff held the position of Hub Operations Manager.[2] On the afternoon of Mon-

---

1. In her response to Defendant's motion for summary judgment, Plaintiff concedes that her sex discrimination claim is outside the scope of her EEOC charge. Accordingly, she agrees to the dismissal of this claim.

2. The record is silent as to how long Plaintiff has been in this position.

day, June 10, 1996, Plaintiff was involved in a conversation inside her cubicle with several of Defendant's employees.[3] During this conversation, another member of Defendant's management team, Paul Go, an Asian male walked past Plaintiff's cubicle. Although uncertain as to the nature of the conversation, Go believes it centered around Koreans or Asians in general.[4] Go, being Asian, perceived Plaintiff's comments as "gibberish that meant nothing and was done only to get a laugh from her audience". When Go returned to his cubicle, he was sitting across from Lin Boles, another manager. Sensing that Go was bothered, Boles informed Plaintiff that the tone and nature of her conversation might be construed by others to be racially insensitive.

Later that evening, Plaintiff approached Go and informed him "that her conversation stemmed from the fact that she once traveled to Korea and was imitating her interaction with the people. She also told Go that the conversation had nothing do with him, but centered around Buddhism and that he should not be offended." Go states that later, Plaintiff phoned him and stated that if he was offended by her comments then she was sorry. Go filed an internal complaint.

Based on the allegations contained within Go's complaint, on July 26, 1996, Plaintiff was suspended for seven days with pay for allegedly violating Defendant's Acceptable Conduct Policy.[5] On August 1, 1996, Plaintiff was told that "the investigation revealed that she had made inappropriate comments in front of other employees in the workplace, had refused to acknowledge that her conduct was inappropriate when confronted by another member of management, and had displayed unprofessional, uncooperative and disruptive conduct during the investigation interview". Additionally, effective immediately, she was terminated from her position of Operations Manager.

As a result of her termination, Plaintiff filed a "Step I GFTP",[6] challenging the termination letter she had received. On August 9, 1996, Plaintiff was informed that Defendant had decided to uphold the termination letter. On August 10, 1996, Plaintiff informed Defendant that she was pursuing the Second Step GFTP as a result of the termination letter she had received. On August 27, 1996, Plaintiff received a letter from William Logue, Vice President of the National Hub Operations–South, informing her that Defendant would uphold management's previous decision. Plaintiff was further advised that she could proceed to Step III of the GFTP. Plaintiff appealed the decision, according to the procedure outlined in the GFTP and on February 14, 1997, she was informed that

**3.** The account of this incident is taken from Paul Go's personal statement that he prepared to be sent to Dee Cadden, Senior Personnel Representative, and Bill Willard, Go's senior manager.

**4.** Defendant asserts that Plaintiff, during this conversation, mimicked the Asian dialect by using the terms "ching chang, ying yang, and dolla". Additionally, Plaintiff referred to an Asian shopkeeper as "stupid for not understanding English". These specifics were not included in Go's statement.

**5.** Plaintiff was found to have violated Section P2–5 however, the record is silent as to the type of conduct prohibited by this section of the Policy.

**6.** The Guaranteed Fair Treatment Procedure, GFTP, is Defendant's procedure for resolving an employee's complaint. It is a three step process whereby the complainant, upon unsatisfactory resolution at the previous step, may file three separate complaints, one to each level of management. The steps in the GFTP are outlined below:

1. Management Review—complainant submits a written complaint to management for review by complainant's manager, senior manager and managing director
2. Officer Review—complainant submits a complaint to either the vice president or senior vice president for review.
3. Executive Review/Appeals Board—complainant submits complaint to Employee Relations for review by the Appeals Board.

she would be reinstated to her previous position. Further, upon her return to work, she would be issued a warning letter and a five day disciplinary suspension without pay for violation of the Acceptable Conduct Policy. Plaintiff appealed this decision and was issued a final and binding denial.

Rick Dell, a white male, was also a member of Defendant's Hub Operations Management team. Sometime in 1995, he was accused of sexually harassing one of his former subordinates. Dell had made lewd comments to her and given his subordinate greeting cards with "suggestive and totally unacceptable" messages. (Pla.Resp. to Def.Mot.Summ.Judg. pp. 20–21). Dell's conduct was found to have violated the Acceptable Conduct Policy P2–5 and consequently, he was demoted from Hub Operations Manager to the position of part-time Operations Agent. (Id.) Dell refused this demotion and eventually resigned. It is Defendant's position that during the course of his investigation, Dell apologized for inappropriate actions he might have taken and was very cooperative during the investigation. (Def.Resp. to Pla. Reply p. 7).

Paul Hofer, also a white male, was a member of Defendant's Hub Operations Management Team. A complaint was made against Hofer, by a black female subordinate, that during a performance review he made racially discriminatory comments. Specifically, Hofer made the comment that the employee "should be glad Defendant is in Memphis because before [Defendant located within the area], black people in Memphis had to move to Chicago or Detroit to find a good job". (Def.Mot.Summ.Judg. p. 12). Defendant notes that Hofer apologized for his comment and was cooperative during the investigation of the charge against him. Id. It was decided that Hofer would undergo counseling for his comment.

## STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to in-terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. civ. P. 56(c). The court also may consider any material that would be admissible or usable at trial, including exhibits that have been properly made a part of an affidavit. 10A Charles A. Wright , Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2721, at 40, § 2722, at 56 (2d ed.1983). The evidence and inferences based on facts must be viewed in a light most favorable to the nonmoving party, in this case the plaintiff. *Kochins v. Linden–Alimak, Inc.* 799 F.2d 1128, 1133 (6th cir.1986).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party's initial burden of proving that no material facts exist may be accomplished by showing there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This in turn may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2727, at 35 (2d ed. Supp.1996).

Once a properly supported motion for summary judgment is made, the nonmovant "may not rest upon the mere allegations or denials of [its] pleadings," Fed.R.Civ.P, 56(e), but must—by affidavits or other evidence—"come forward with some probative evidence in support of its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th cir.1991), *cert.*

*denied,* 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Significantly, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The order and allocations of burdens of proof in Title VII discrimination cases, in the absence of direct evidence, are guided by the evidentiary framework set forth by the Supreme Court in the landmark cases of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1159 (6th Cir.1990). Under this framework, plaintiff must prove a *prima facie* case of discrimination by a preponderance of the evidence. *Wilson v. Stroh Cos.,* 952 F.2d 942, 945 (6th Cir.1992), *citing Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089. If plaintiff succeeds, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Galbraith v. N. Telecom, Inc.,* 944 F.2d 275, 279 (6th Cir.1991) (citing *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089), *cert. denied,* 503 U.S. 945, 112 S.Ct. 1497, 117 L.Ed.2d 637 (1992).

Once the employer has come forward with a legitimate, non-discriminatory reason for an adverse employment action, plaintiff still may prevail if she establishes by a preponderance of the evidence that the apparently non-discriminatory rationale was only a pretext for discrimination on the basis of the prohibited consideration of race. *Wilson,* 952 F.2d at 945; *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 584 (6th Cir.1992). Regardless of the shifting burdens of production, the plaintiff at all times

bears the "ultimate burden of persuasion." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), *citing Burdine,* 450 U.S. at 256, 101 S.Ct. 1089.

In order to establish a prima facie case of discrimination, Plaintiff must prove four elements:

   A.  that Plaintiff is a member of a protected group;

   B.  that Plaintiff was subject to an adverse employment action;

   C.  that Plaintiff was qualified for the position sought or held; and

   D.  that Plaintiff was replaced by a person outside the protected class.

*Id.* at 802, 93 S.Ct. 1817; *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335, n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (if Plaintiff offers no direct evidence of unlawful discriminatory intent, the *McDonnell Douglas* test applies); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1246 (6th Cir.1995) (the fourth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably); *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796 (6th Cir.1994); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582–583 (6th Cir.1992).

*ANALYSIS*

   A.  Plaintiff's Title VII claims

In the case at bar, Plaintiff has offered no credible direct evidence of racial animus, thus, the court will proceed to analyze Plaintiff's claims within the *McDonnell Douglas* framework. Applying the relevant standards, Plaintiff clearly meets the first and third elements of the *prima facie* case. As an African–American female she is a member of a protected class. During the course of her employment, Plaintiff consistently received high performance ratings. (Ammer Depo. pp. 55–56). Therefore, there is no dispute that she was qualified for the position. Defendant argues that Plaintiff is unable to sustain her

burden as to elements two and four—that she was subjected to an adverse employment decision and that she was treated less favorably than similarly situated non-protected employees.

Defendant argues that because the termination was rescinded, Plaintiff did not suffer from an adverse employment decision. Generally, voluntary remedial acts are no basis for subsequent liability. *See* Fed.R.Evid. 407 (evidence of "subsequent [remedial] measures is not admissible to prove ... culpable conduct"). Defendant offers the opinion in *Dennis v. County of Fairfax*, 55 F.3d 151 (4th Cir.1995) as authority for the proposition that Defendant cannot be held liable for discrimination solely because it took corrective measures by rescinding Plaintiff's termination and allowing her to receive back pay.

In *Dennis*, an African–American county employee brought suit against the county alleging racial discrimination in violation of § 1981 and Title VII. After a vociferous disagreement with a white co-worker, plaintiff received a written reprimand while his co-worker received an oral reprimand. Second, plaintiff, in his 1992 performance review, received lower marks than he had in 1991. The plaintiff argued that this difference in treatment constituted discrimination. Plaintiff filed an internal complaint and in response, the written reprimand was deleted from Plaintiff's file and the lower marks were raised to meet those of the preceding year. Importantly, although plaintiff's 1992 marks were numerically lower, they were still within the allowable range for Plaintiff to receive the same salary increase he would have received with the higher numbers.

The opinion in *Dennis* is inapposite because, unlike the Defendant in *Dennis*, the Defendant in this case did not wholly rescind the alleged discriminatory act. There is still the outstanding matter of Plaintiff's suspension for five days without pay.[7] Defendant argues that Plaintiff's reduced discipline cannot be considered an adverse action because Plaintiff did not file a separate discrimination charge for this act. In support of this argument, Defendant offers the Ninth Circuit opinion in *Dosier v. Miami Valley Broadcasting Corp.*, 656 F.2d 1295 (9th Cir.1981), for the proposition that where new incidents of alleged discrimination occurred while the Plaintiff's original charge was pending before the EEOC, the Plaintiff's failure to file another charge barred Plaintiff's recovery on those claims. At the outset, the court notes Defendant's mischaracterization of its cited authority.

In *Dosier*, the plaintiff filed suit based on five chronologically distinct acts of discriminatory conduct. Plaintiff had filed only three EEOC charges—a retaliation claim and two racial discrimination claims. Plaintiff argued that it was unnecessary to file EEOC charges on the latter two incidents—race discrimination and retaliation—because they were evidence of continuous discrimination by the employer. In the meantime, however, a class action suit was filed by one of plaintiff's co-workers, including plaintiff as a class member, alleging that the plaintiffs had been given lower pay, denied a promotion, and discriminated against on the basis of race. The class action suit was settled before Plaintiff's latter two instances of discriminatory conduct occurred.

The district court found that plaintiff's pre-settlement discrimination claims were barred by the doctrine of res judicata and granted the employer summary judgment as to those claims. Additionally, the dis-

---

7. Plaintiff also argues that she was denied certain "bonuses and awards" during the months of her termination. (Pla.Resp. to Def. Mot.Summ.Judg. p. 15). From the record, it is not clear what bonuses and awards Plaintiff would have been entitled to merely by being employed with Defendant. As discovery has

not been completed and there is still an outstanding motion to compel Defendant to produce potentially relevant documents, the court will allow the jury to determine whether Plaintiff may have been entitled to any bonuses and awards.

trict court granted the employer summary judgment on Plaintiff's post-settlement claims because they found that as to those claims, he failed to file a timely charge with the EEOC. In its review, the Appellate Court partially affirmed the decision of the district court and held that the plaintiff could not litigate claims covered by the class action settlement. *Dosier,* 656 F.2d at 1298. Additionally, the Appellate Court held that because the settlement did not cover alleged retaliatory conduct, those claims were properly before the court and should not have been summarily dismissed. Moreover, "a plaintiff [could] seek relief for discriminatory acts not listed in his original charge, so long as the acts are reasonably related to that charge, and they occur while the charge is pending before the EEOC ... the original charges [would] satisfy the statutory prerequisite for plaintiff's post settlement claims only if the original charges [were] still actionable." *Id.* at 1300.

■ In the case at bar, Plaintiff filed a race discrimination charge with the EEOC alleging that she had been wrongfully terminated. Plaintiff was then rehired and suspended for five days without pay with the same set of facts giving rise to both scenarios. The Commission, in investigating Plaintiff's charge would, by necessity, have to inquire into Defendant's normal course of action when a member of management violated the acceptable conduct policy. It follows that the Commission would have had to investigate whether a five day suspension without pay was appropriate. *See generally EEOC v. Keco,* 748 F.2d 1097 (court's review is limited to stated allegations contained within complaint and matters reasonably expected to grow out of the initial charge of discrimination). Although not binding on the court, *Dosier* appears to support Plaintiff's argument that she did not need to file a separate charge concerning the five day suspension without pay. Plaintiff has shown that she suffered an adverse employment action.

■ The fourth and final element Plaintiff must show to establish a *prima facie* case of race discrimination is that she was treated differently than similarly situated non-protected employees. To satisfy this prong, the Plaintiff must demonstrate that: 1) employees outside the protected class engaged in similar or comparably serious misconduct and 2) that the disciplinary measures enforced against Plaintiff were more severe than those employed against employees outside the protected class. *See generally Reynolds v. Humko Products,* 756 F.2d 469 (6th Cir.1985).

Plaintiff argues that Rick Dell and Paul Hofer are examples of similarly situated co-workers who were treated more favorably than she was. Dell, after being accused of sexual harassment in violation of Defendant's acceptable conduct policy, was allowed to retain his position during the investigation of the charges against him. Additionally, once he was found to have violated the Policy he was not terminated, but demoted. Hofer violated the Policy when he made a statement concerning race to a minority employee during a performance review. He was allowed to retain his position while the Defendant investigated the charges and was later merely counseled about his offensive remarks. Both of these white males were Hub Operations Managers under the directorship of Henry Bartosch.

Relying on *Mitchell,* Defendant contends that neither Dell nor Hofer were similarly situated to Plaintiff. Under *Mitchell,* "to be deemed similarly situated, the individuals with whom the Plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell,* 964 F.2d at 582. Defendant argues that Dell is not similarly situated to Plaintiff because his conduct was "appropriate" when confronted by man-

agement and he did not engage in unprofessional, uncooperative and disruptive conduct during the investigation. Further, Defendant contends that Hofer was not similarly situated to Plaintiff because Hofer's comments were only "perceived" as being offensive whereas Plaintiff's allegedly discriminatory comments were "per se offensive".

Plaintiff posits the opinion in *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir.1998), for the proposition that the Sixth Circuit has retreated from a narrow and rigid interpretation of *Mitchell*. The *Ercegovich* court held that "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects' ". *Id.* at 352 (citation omitted) (emphasis added). Additionally, *Mitchell* mandates that courts make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee. "The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly situated' "; rather ... the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in "all relevant aspects." *Id.* at 353 (Citation omitted).

Although the court notes the dissimilarities pointed out by the Defendant, the court also notes the following similarities between Plaintiff, Hofer and Dell: 1) they were all Hub Operations Managers; 2) they had the same job responsibilities; 3) they were all under the directorship of Henry Bartosch;[8] and 4) they were all accused of and found to have made discriminatory comments about or to subordinates. In both Dell's and Hofer's cases, the disparaging comments were made directly to the subordinates. During their respective investigations, both men denied having made the alleged statements and expressed the view that whatever they said had been taken out of context.

■■■ Plaintiff, on the other hand, was involved in a private conversation within the confines of her work space and with persons other than the complainant. It is Plaintiff's position that she did not make any discriminatory comments and whatever comments she may have made were taken out of context. Her position is no different than that taken by Dell and Hofer. Defendant apparently focused on the fact that Plaintiff, unlike Dell and Hofer, failed to apologize, or somehow take responsibility for her alleged discriminatory statements and thus she committed "leadership failure". Defendant misses one crucial fact—Go confirms in his statement that Plaintiff stated that she was sorry if he had been offended. While an employer may determine that certain misconduct is grounds for termination, the standard must be "applied alike to members of all races." *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 2580, 49 L.Ed.2d 493 (1976). Although Defendant had less incriminating evidence against Plaintiff than against Dell and Hofer, including the lack of a clear statement by Plaintiff that could have been perceived as discriminatory, Plaintiff received the harshest punishment. This disparate treatment of similarly situated employees constitutes a *prima facie* case of race discrimination. The burden now shifts to Defendant to offer a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

Defendant argues that Plaintiff was terminated for "leadership failure" based upon her discriminatory comments and her conduct during the investigation. Defendant's argument, if true, reflects a permissible reason for Plaintiff's termination. The burden now shifts back to Plaintiff to show that Defendant's reason for her termination was mere pretext.

---

8. Plaintiff and Dell also had the same immediate supervisor, Brad Ammer.

■ In order for Plaintiff to carry her burden, she must demonstrate, by a preponderance of the evidence, that: 1) the profered reason had no basis in fact; 2) the proffered reason did not actually motivate her discharge; or 3) that the proffered reason was insufficient to motivate the discharge. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

■ Based on the previously discussed disparate treatment between Plaintiff, Hofer, and Dell, the court finds that Plaintiff has sufficiently established a genuine issue of material fact as to whether Defendant's articulated reason for her termination was pretextual. Accordingly, Defendant's motion for summary judgment as to Plaintiff's claim of race discrimination is **denied.**

B. Plaintiff's § 1981 claim

Plaintiff asserts that Defendant's actions in terminating and suspending Plaintiff violated her rights under 42 U.S.C. § 1981. Section 1981 provides in relevant part:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

Defendant responds to this allegation by raising the statute of limitations as a legal defense to Plaintiff's allegation under § 1981.

Section 1981 does not contain its own statute of limitations. Defendant asserts that in this instance, the court should look to the most appropriate or analogous state statute of limitations, in this case Tennessee. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S.Ct. 2617, 2620, 96 L.Ed.2d 572 (1987). The Sixth Circuit has held that a state's limitations period for personal injury actions is "the most analogous statute" to § 1981. *Johnson v. Railway Express Agency, Inc.*, 489 F.2d 525, 529 (6th Cir.1973). Tennessee law provides that civil actions brought under the federal civil rights statutes shall be commenced within one year after the cause of action accrued. Tenn.Code.Ann. § 28–3–104(a)(3). In the case at bar, Plaintiff was terminated on August 1, 1996, reinstated on February 14, 1997, and suspended for five days without pay. Plaintiff filed her complaint on March 30, 1998. Thus, under Defendant's theory, Plaintiff's § 1981 claim is time barred.

Plaintiff argues that because § 1981 does not contain its own statute of limitations, her claims which fall into this category are subject to the four year statute of limitations period set forth in Title 28 U.S.C. § 1658. Title 28 U.S.C. § 1658 reads in relevant part:

"Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than four years after the cause of action accrues."

The applicability of § 1658 to claims brought under § 1981 presents a novel question for this court.[9] Because there is no controlling authority on this issue, the

---

9. Section 1981 was passed originally as the Civil Rights Act of 1870. It prohibited racial discrimination in the making and enforcement of private contracts but, did not apply to conduct which occurred after the formation of a contract and which did not interfere with the right to enforce established contract obligations. *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In 1991, Congress, in response to several Supreme Court decisions holding the same, amended § 1981 and enacted the Civil Rights of 1991. The Civil Rights Act of 1991 expanded the scope of § 1981 creating in employees the right to be free from discrimination in the performance, modification, and termination of contracts. *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 313, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994).

court will begin its examination of the issue by examining the section's legislative history.

The legislative history of § 1658 reflects congressional concern about the practice of borrowing limitation periods from state laws to rectify deficiencies in federal statutes. As the Senate noted:

> Section 1658 provides a fall back statute of limitations ... for federal civil actions by providing that, except as otherwise provided by law, a civil action arising under an Act of Congress may not be commenced later than four years after the cause of action accrues. Statutes of limitations provide a specific time period after the contested event within which a case must be commenced. At present, the federal courts "borrow" the most analogous state law limitations period for federal claims lacking limitations periods. Borrowing, while defensible as a decisional approach in the absence of legislation, appeals to lack persuasive support as a matter of policy. It also creates several practical problems: It obligates judges and lawyers to determine the most analogous state law claim, it imposes uncertainty on litigants; reliance on varying state laws results in undesirable variance among the federal courts and disrupts the development of federal doctrine on the suspension of limitation periods.

(The Implementation Act, Pub.L. No. 101–650, Title III, § 313(a), 104 Stat. 5114 (1990 & Supp. III 1991). The House Report on § 1658 contains similar language. Clearly then, Congress desired to cure the problems of nonuniformity and uncertainty created under the state law borrowing practices. *See* H.R.Rep. No. 734, 101st Cong., 2d Sess. 24 (1990), U.S.Code Cong. & Admin.News 1990.

No Circuit Court has undertaken an in depth analysis of whether 28 U.S.C. § 1658 is applicable to § 1981 claims brought after the enactment of § 1658—December 1, 1990. The Sixth Circuit had occasion to visit the issue in *Young v. Sabbatine,* 142 F.3d 438, 1998 WL 136559 (6th Cir.1998). Briefly, the plaintiff in *Young,* appealed the decision of the district court dismissing his complaint on procedural grounds, i.e. plaintiff's Title VII claim for failure to exhaust his state remedies; plaintiff's § 1981 claim as untimely; and plaintiff's state law discrimination claim for a prior election of an administrative remedy. The Sixth Circuit, taking each argument in turn, found that plaintiff complied with the requirements set forth in 42 U.S.C. § 2000e–5(c)–(d) (1994) and waited the appropriate amount of time before filing his EEOC claim.[10] The district court's opinion on this issue was reversed and remanded for further proceedings. The Circuit Court then turned to plaintiff's claims arising under § 1981. In its analysis, the court noted two relevant considerations in determining the relevant statute of limitations. First, federal courts customarily borrowed the limitations period of an analogous state statute. Second, in 1991 Congress expanded the scope of § 1981 to prohibit discrimination in the performance, modification, and termination of contracts, as well as the formation of contracts. (Citations omitted). Based on these considerations, the Circuit Court found the district court's perfunctory application of Kentucky's one year statute of limitations, without consideration of § 1658's application, problematic.

The parties have submitted various district court opinions on the issue. *See Lane v. Ogden Entertainment, Inc.,* 13 F.Supp.2d 1261 (M.D.Ala.1998) (Section 1658 does not apply to § 1981 claims); *Mason v. Anadarko Petro. Corp.,* 1998 WL 166562 (D.Kan.1998); *Jackson v. Motel 6 Multipurposes, Inc.,* 1997 WL 724429 (M.D.Fla.1997); *Alexander v. Precision Machining, Inc.,* 990 F.Supp. 1304 (D.Kan.

---

**10.** Title 42 U.S.C. § 2000e–5(c)–(d) requires that in deferral states, such as Kentucky, an aggrieved employee may not file a claim under Title VII with the EEOC until 60 days after filing a charge of discrimination with the state or local agency.

1997) (section 1658 applied to actions brought under section 1981 for post contract formation discriminatory conduct); *MCI Telecomm. Corp. v. Illinois Bell Telephone Co.,* 1998 WL 156674 (N.D.III.1998) (section 1658 should apply to actions under 1996 amendments to 1934 Federal Telecommunications Act). A careful reading of the opinions in those cases, reveals a split on the question of the applicability of § 1658 to claims brought under the Civil Rights Act of 1991.

Fundamental to answering the applicability question, and rightly so, has been the determination of the effect § 1658 has on post–1990 amendments to pre–1990 federal statutes. Those courts holding that § 1658 had no effect essentially did so based on the principle of stare decisis. Essentially, those courts found that there was a distinction between an act "enacted" after 1990 and an amendment to an existing act after 1990. Amendments to a pre–1990 act after 1990 did not come under the fall back statute of limitation contained in § 1658. *See Lane,* 13 F.Supp.2d at 1268–70; *Mason,* 1998 WL 166562, *5; *Jackson v. Motel 6 Multipurposes, Inc.,* 1997 WL 724429, *4. Those cases holding that § 1658 required the application of a four year statute of limitations did so based upon the theory that the relevant statutory amendment was not "merely technical in nature" and that it either created a new cause of action or restored a cause of action previously overlooked by the courts. In either event, the relevant amendment was an enactment for purposes of § 1658. *Alexander v. Precision Machining, Inc.,* 990 F.Supp. 1304 (D.Kan.1997) (section 1658 applied to actions brought under section 1981 for post contract formation discriminatory conduct); *MCI Telecomm. Corp. v. Illinois Bell Telephone Co.,* 1998 WL 156674 (N.D.III.1998) (section 1658 should apply to actions under 1996 amendments to 1934 Federal Telecommunications Act).

■ This court finds that § 1658 is applicable to Plaintiff's § 1981 claim for two primary reasons. First, the impetus behind Congress' enactment of § 1658 was to develop uniformity in the characterization of federal claims. Second, with the passage of the Civil Rights Act of 1991, Congress created new substantive rights to prevent the nondiscriminatory treatment of a future litigant after the formation of a contract including actions having a direct bearing on a person's terms and conditions of employment. *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 313, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994). In the absence of any controlling authority to the contrary, the court finds that § 1658 mandates application of the four year statute of limitations. Accordingly, Plaintiff's § 1981 claims are not time barred. Defendant's motion for summary judgment on Plaintiff's § 1981 claim is **denied.**

Defendant's motion for summary judgment on Plaintiff's claim of sex discrimination under Title VII is **granted.** Defendant's motion for summary judgment on Plaintiff's Title VII claim for race discrimination is **denied.** Defendant's motion for summary judgment as to Plaintiff's § 1981 claim for discrimination in the terms and conditions of her employment is **denied.**