Candice V. COLEMAN, Kimberley
D. Coleman, Nisa Hawkins
Plaintiffs,

v.

SHONEY'S, INC., Defendant.

No. 99–3134.

United States District Court,
W.D. Tennessee,
Western Division.

March 9, 2001.

Litigant's Attorney, Jeffrey S. Rosenblum, Kirk A. Caraway, Rosenblum & Reisman, Memphis, for Candice V. Coleman, Kimberly D. Coleman, Nisa Hawkins, plaintiffs.

Frederick J. Lewis, James R. Mulroy, II, Whitney Fogerty, Joseph Kellam Warren, Lewis Fisher Henderson & Claxton, Memphis, for Captain D's aka TPI Restaurants, Inc. aka Shoney's, Inc., Shoney's, Inc., defendants.

## ORDER DENYING PLAINTIFFS' MOTION TO AMEND

GIBBONS, District Judge.

On December 23, 1999, plaintiffs Candice Coleman, Kimberly Coleman, and Nisa Hawkin brought this action against their employer, Shoney's, Inc. ("Shoney's"), alleging that Shoney's discriminated against them on the basis of their race and sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Plaintiffs amended their complaint on May 11, 2000, to include a claim for relief under the Tennessee Human Rights Act, Tenn.Code Ann. § 4–21–101, *et seq.* On June 14, 2000, however, the court granted plaintiffs' motion to voluntarily dismiss this state law claim, as it was barred by the applicable one year statute of limitations. The court now considers plaintiffs' motion to again amend their complaint, but in this case, to assert a cause of action under 42 U.S.C. § 1981 *et seq* ("Section 1981").

Pursuant to Federal Rule of Civil Procedure 15(a), a party "may amend the party's pleading only by leave of court or by writ-

ten consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The use of the word, "shall," indicates a clear preference for allowing parties to amend their pleadings. As the Supreme Court noted in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Id.* at 182, 83 S.Ct. 227. Of course, since a court has the leeway to decide when "justice so requires," "the grant or denial of an opportunity to amend is within the discretion of the District Court." *Id.*

■■■■ "A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). An amendment can be futile if the claims it asserts are barred by the applicable statute of limitations. *Marx v. Centran Corp.*, 747 F.2d 1536, 1551 (6th Cir. 1984). Applying this rule, Shoney's contends that plaintiffs' proposed claim under section 1981 is futile, because the initial complaint in this case was filed after the one-year statute of limitations traditionally applicable to section 1981 claims arising in Tennessee had tolled. Plaintiffs do not deny that the complaint was filed more than one year after any discriminatory act occurred; rather, they contend that the four-year statute of limitations contained within 28 U.S.C. § 1658 ("Section 1658") applies to ﹍section 1981 claims as well. Therefore, the only disputed issue in this

motion is the applicable statute of limitations for plaintiffs' proposed section 1981 claim.

Section 1981 was enacted after the Civil War "to uproot the institution of slavery and to eradicate its badges and incidents." *Long v. Ford Motor Co.*, 496 F.2d 500, 504 (6th Cir.1974). As it read then, it provided:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Act of May 1, 1970, ch. 114, § 16, 16 Stat. 144 (current version at 42 U.S.C. § 1981). In *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), the United States Supreme Court held that, "[b]ecause § 1981 ... does not contain a statute of limitations, federal courts should select the most appropriate or analogous state statute of limitations." *Id.* at 660, 107 S.Ct. 2617. Since a corresponding Tennessee statute provides that "[a]ctions ... brought under the federal civil rights statutes ... shall be commenced within one (1) year after cause of action accrued," Tenn.Code Ann. § 28–3–104, federal courts have traditionally applied a one year statute of limitations to all section 1981 claims arising in Tennessee. *See, e.g., Jackson v. Richards Medical Co.*, 961 F.2d 575, 577–78 (6th Cir.1992).

On December 1, 1990, section 1658 was enacted "in response to calls for a new, nationally uniform statute of limitations for federal causes of action not having their own explicit limitations period." *Zubi v.*

*AT&T Corp.,* 219 F.3d 220, 223 (3d Cir. 2000). Section 1658 provides:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658. Congress considered making section 1658 retroactive, but purposely chose otherwise, in order to avoid upsetting the well-established case law on statutes of limitations that had evolved over the years:

> Witnesses testifying on behalf of the Department of Justice and the Judicial Conference, urged that this section be made retrospective, so as to provide a fallback statute of limitations for previously enacted legislation lacking a limitations period. As witness George Freeman noted at the hearing, however, with respect to many statutes that have no explicit limitations provision, the relevant limitations period has long since been resolved by judicial decision, with the applicable period decided upon by the courts varying dramatically from statute to statute. Under these circumstances, retroactively imposing a four year statute of limitations on legislation that the courts have previously ruled is subject to a six month limitations period in one statute, and a ten year period in another, would threaten to disrupt the settled expectations of a great many parties. Given that settling the expectations of prospective parties is an essential purpose of statutes of limitation, the Committee was reluctant to apply this section retroactively without further study to ensure that the benefits of retroactive application would indeed outweigh the costs.

H.R. REP. 101–734, § 111, at 24 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6870.

In 1989, the United States Supreme Court held that the right to "make" contracts and the right to "enforce" contracts guaranteed in section 1981 only extended to "the formation of a contract," and to "conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights," respectively. *Patterson v. McLean Credit Union,* 491 U.S. 164, 176–178, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). According to the Court, the protections of section 1981 did not extend to racially discriminatory terminations. *Id.* at 182–85, 109 S.Ct. 2363. In response to the Court's decision, Congress amended section 1981 in the Civil Rights Act of 1991 to include, among other changes, "termination of contracts" within the definition for the term, "make and enforce contracts." Section 1981 now reads:

(a) Statement of equal rights

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

> The rights protected by this section are protected against impairment by

nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.

Some courts have subsequently held that the four-year statute of limitations imposed by 28 U.S.C. § 1658 should be applied to claims based on the newly amended language of section 1981, specifically claims of racially discriminatory termination like those alleged by plaintiffs in this case. *See, e.g., Miller v. Federal Express Corp.,* 56 F.Supp.2d 955 (W.D.Tenn. 1999); *Rodgers v. Apple South, Inc.,* 35 F.Supp.2d 974 (W.D.Ky.1999). One appellate court has already voiced its disagreement, however, holding that "[i]t is . . . only when Congress establishes a new cause of action without reference to preexisting law that § 1658 applies." *Zubi,* 219 F.3d at 225. Though it has noted the possible effect of section 1658 on the 1991 amendments to section 1981, *Young v. Sabbatine,* No. 97–5169, 1998 WL 136559, at *3 (6th Cir. Mar.19, 1998), the Court of Appeals for the Sixth Circuit has not ruled authoritatively on this issue. Therefore, this court must conduct its own analysis of this matter.

Whether section 1658 is applicable to the 1991 amendments to section 1981 depends on the interpretation of the terms, "arising" and "enacted," in section 1658. To determine the meaning of these words, the court is required to first look at their plain meaning:

> Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'

*Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (quoting *United States v. Ron Pair Enters.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). Dictionary definitions for the word, "arise," pertinent to section 1658 are "to originate from a specified source," and "to come into being." Webster's Third New International Dictionary 117 (1981). The word, "enact," means "to establish by legal and authoritative act," or "to perform the last act of legislation upon (a bill) that gives the validity of law." *Id.* at 745. Therefore, section 1658 is only applicable, when an action originates from a right established by Congress after 1990.

Since Congress passed section 1981 as part of the Civil Rights Act of 1870, individuals have had the right to bring suit in federal court, if they were not allowed the right "to make and enforce contracts" on account of their race. Judicial rulings and congressional acts have altered the meaning of the right "to make and enforce contracts," but they have not changed the statutory basis for this right. Courts finding that section 1658 is applicable to section 1981 claims have often cited as support the notion that Congress created "new substantive rights" with the passage of the Civil Rights Act of 1991. *See, e.g., Miller,* 56 F.Supp.2d at 965. In doing so, though, they ignore the fact that these allegedly new substantive rights arise under the right "to enforce and make contracts," which was established by an act of Congress over a century earlier. As such, they are properly termed "amendments" and do not fall under the provisions of section 1658. *See Lane v. Ogden Entertainment, Inc.,* 13 F.Supp.2d 1261, 1268 (M.D.Ala.1998) ("The simple truth is that § 1658 applies to 'an act of Congress enacted after 1990, which of course, is entirely different from an act of Congress amended after 1990.'") (quoting *Jackson v. Motel 6 Multipurposes, Inc.,* Nos. 96–72–CIV–FTM–17D, 96–115–CIV–FTM–17D,

1997 WL 724429, at *2 (M.D.Fla. Nov.6, 1997)); *Davis v. State of California Dept. of Corrections,* Civ. No. S–93–1307DFL GGH, 1996 WL 271001, at *19 (E.D.Cal. Feb.23, 1996) (adapting an interpretation of section 1658 that "emphasizes 'an act of Congress enacted' after 1990 as distinguishable from 'an act of Congress amended' after 1990.").

At least one court within this circuit has criticized distinguishing between "amendments" and "enactments" as "unsatisfactory because it seems to stray from common sense and ignores the literal process of enactment." *Rodgers,* 35 F.Supp.2d at 976. If section 1658 applied to new claims created by post–1990 amendments to statutes enacted before 1990, however, the results would be both awkward and absurd. First, courts would face the confusing task of determining whether a claim was actually "new":

> [D]etermining what is a "new" claim, created by an amendment, is a task fraught with uncertainty. Amendments vary in their purpose, and the line between an amendment that modifies an existing right and one that creates a new right is often difficult to draw.

*Zubi,* 219 F.3d at 224. Second, claims based on the same statute would potentially have different statute of limitations. Even claims brought by the same plaintiff under section 1981 could have different limitations periods, if a plaintiff brought both a claim permitted prior to the 1991 amendments and one only permitted after the amendments, even though both claims arise under her right to "make and enforce contracts" free from racial discrimination. Rather than follow such an absurd result, the court adheres to the plain language of the statute, differentiates between "amendments" and "enactments," and holds that section 1658 does not apply to claims arising under amendments to sec-

tion 1981. *See Armstrong Paint & Varnish Works v. Nu–Enamel Corp.,* 305 U.S. 315, 333, 59 S.Ct. 191, 83 L.Ed. 195 (1938) ("[T]o construe statutes so as to avoid results glaringly absurd, has long been a judicial function.")

This court's decision to abide by the traditional statute of limitations for section 1981 is also consistent with the legislative intent of the drafters of section 1658. *See Ron Pair Enters.,* 489 U.S. at 242, 109 S.Ct. 1026 ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' ") (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). As previously mentioned, Congress intentionally chose not to make section 1658 retroactive, explicitly because of its concern that the retroactive application of a four-year statute of limitations "would threaten to disrupt the settled expectations of a great many parties." H.R. REP. 101–734, § 111, at 24 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6870. Were the court to apply section 1658 to the 1991 amendments to section 1981, it would depart from the long-held rule within this circuit that section 1981 claims brought in Tennessee are bound by a one-year statute of limitations. In doing so, it would unsettle the expectations of prospective parties, and create the result Congress hoped to prevent.

In accordance with the preceding analysis, this court thus finds that section 1658 is not applicable to any claim arising under section 1981, and that the one year statute of limitations traditionally applicable to claims brought under section 1981 in Tennessee applies in this case. *Johnson v. Railway Express Agency, Inc.,* 489 F.2d 525, 529 (6th Cir.1973). Since no allegedly

discriminatory act occurred within one year of the filing of plaintiffs' original complaint, plaintiffs' proposed claim under 1981 is futile. *See Dixon v. Anderson,* 928 F.2d 212, 217 (6th Cir.1991) (noting "that there must be a specific allegedly discriminatory act against the plaintiff within the relevant limitations period measured back from the time of the complaint.") Accordingly, plaintiffs' motion to amend their complaint is denied.

IT IS SO ORDERED.