**Wesley JARMON, Plaintiff,**

v.

**Michael K. POWELL, Chairman, Federal Communications Commission, Defendant.**

**No. Civ.A. 01–0580(JDB).**

United States District Court, District of Columbia.

July 2, 2002.

Donald Melvin Temple, Washington, DC, Richard Lloyd Thompson, II, Silver Spring, MD, for plaintiff.

Wesley M. Jarmon, Bowie, MD, pro se.

Lisa Barsoomian, Washington, DC, for defendant.

## MEMORANDUM OPINION

BATES, District Judge.

Plaintiff Wesley Jarmon, an African–American, brings this case under Title VII,

42 U.S.C. § 2000e, against Michael K. Powell, Chairman of the Federal Communications Commission ("FCC" or "defendant") for race discrimination with respect to promotions. Presently before the Court is defendant's motion for summary judgment based on plaintiff's failure to state a claim and failure to exhaust administrative remedies. For the reasons stated below, the motion is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, an employee in the FCC's Audit Branch since 1987, charges defendant with discriminatory practices in the award of promotions. Amended Compl. ¶¶ 2, 8. Plaintiff alleges that between 1987 and 1997, promotions above GS–13 for white employees occurred without competitive application and "as a matter of due course," *id.* ¶ 9, 10–12, but that in 1997, when it was plaintiff's "turn" to be promoted to GS–14, he was allegedly informed that any promotion would require competitive application. *Id.* ¶ 14. Plaintiff also alleges that managers in the Audit Branch had a practice of identifying white male or female employees for promotion prior to an announcement of a vacancy. *Id.* ¶ 18. In his Amended Complaint, plaintiff points to particular instances in which white employees were hired for positions allegedly created for them, even though plaintiff was allegedly better qualified. *Id.* ¶¶ 16–17, 26.

The heart of plaintiff's Amended Complaint revolves around two specific promotional opportunities that plaintiff failed to receive. The first was a GS–14 position for which plaintiff applied in 1998 under vacancy announcement # 98–91A. *Id.* ¶ 20. According to plaintiff, although the vacancy announcement specified that the position was in Washington, D.C., plaintiff's manager selected Vincent Amalfitano, an FCC employee located in New York. *Id.* ¶¶ 21–22. When plaintiff complained to

personnel about Mr. Amalfitano's ineligibility, the promotion was revoked, but no alternative promotion was issued. *Id.* ¶¶ 23–25. The second promotion involved a vacancy at GS–15 posted in August 1999. *Id.* ¶ 29. According to plaintiff, a white male was selected for this position despite the fact that plaintiff was better qualified. *Id.* ¶ 31.

Plaintiff also asserts that he was denied job assignments based upon his race and that there was a correlation between job assignments, ratings and promotions in the Audits Branch. *Id.* ¶ 34. Plaintiff also alleges that he was the victim of discrimination between 1987 and 1997, but that he did not recognize it because there were no similarly situated African–American employees in the Audits Branch at the time who were eligible for promotion. *Id.* ¶ 36.

Plaintiff filters his allegations into two counts. In Count I, he asserts a claim of race discrimination in promotion practices. Specifically, plaintiff alleges that he was not awarded promotional opportunities for a significant period of time, although Caucasians with lower qualifications and less experience were promoted. *Id.* ¶ 39. Plaintiff also alleges that management tailored vacancy announcements to fit specific Caucasian employees. *Id.* ¶ 42.

In Count II, plaintiff asserts a claim for race discrimination based on compensation. Specifically, he alleges that since 1997 he has performed work equal in skill, effort and responsibility to the work of similarly situated Caucasian employees, who were paid higher salaries for their work. *Id.* ¶ 46. At argument, counsel for plaintiff explained that Count II is essentially based on the same factual allegations as the non-promotion claim in Count I.

Before substantial discovery had been conducted, defendant moved for summary judgment, asserting that plaintiff cannot establish a prima facie case with respect to the GS–15 position and that plaintiff's ad-

ministrative complaint was untimely with respect to earlier non-promotions and allegations of discrimination in compensation. Plaintiff did not file an opposition to defendant's motion. Instead, plaintiff filed a motion to strike defendant's motion on the ground that it was premature because critical discovery had not yet been conducted. Defendant opposed plaintiff's motion to strike, asserting that further discovery was not necessary because all of the relevant facts underlying the summary judgment motion were either undisputed or in the control of plaintiff. Plaintiff then filed a motion for leave to file supplemental exhibits in opposition to the motion for summary judgment, attaching exhibits and an affidavit purporting to rebut defendant's timeliness arguments.[1] Following a conference with the parties, the Court denied plaintiff's motion to strike and permitted plaintiff to file an opposition to defendant's summary judgment motion. Discovery has not yet been completed in this case, and has essentially been stayed since the filing of defendant's motion.

## DISCUSSION

A case may be resolved on a motion for summary judgment when the evidence demonstrates that there is no genuine issue of material fact. *See* Fed.R.Civ.P. 56. In considering a summary judgment motion, the evidence must be viewed in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). However, a nonmoving party must establish more than a "scintilla of evidence" in support of its position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). If the "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (internal citation omitted).

Defendant essentially divides plaintiff's Amended Complaint into three separate sets of allegations, each of which it argues is subject to summary judgment—a claim for failure to promote to GS–14 in 1998 under vacancy announcement # 98–91A; a claim for discrimination in compensation since 1997; and, a claim for failure to promote with respect to the GS–15 position in 1999.

## I. Failure to Promote to GS–14 and Discrimination in Compensation

With respect to the failure to promote to GS–14 in 1998, as well as the related alleged discrimination in compensation, defendant asserts that plaintiff did not comply with administrative deadlines. Under 29 C.F.R. § 1614.105(a)(1), an aggrieved party must initiate contact with an EEO counselor within 45 days of the date of the alleged discriminatory conduct or the effective date of an alleged discriminatory personnel action. Failure to exhaust administrative remedies ordinarily bars a plaintiff from proceeding on his claims in court. *Brown v. Marsh,* 777 F.2d 8, 13 (D.C.Cir.1985); *Williamson v. Shalala,* 992 F.Supp. 454, 457 (D.D.C.1998) ("As a general rule, non-compliance with administrative deadlines will bar a plaintiff from litigating his claims in court."). Here, defendant argues, plaintiff became aware that he was not selected for GS–14 in 1998,[2] but did not contact an EEO counselor until December 1, 1999. *See* Def.'s

---

1. Defendant opposed the motion for leave to file, primarily on the basis that plaintiff fails to explain the significance of the attached materials. Notwithstanding defendant's objection, the Court will grant plaintiff's motion for leave to file.

2. Plaintiff's affidavit and the other factual materials indicate that he became aware that he did not receive the GS–14 promotion in May 1998. *See* Praecipe, February 1, 2002 (hereafter "Pl.'s Opp."), Ex. D ¶ 8.

Mem. in Support of S.J., Ex. D at 1. Accordingly, defendant contends, plaintiff cannot maintain any claim with respect to a failure to promote to GS–14 in 1998 (or earlier) or discrimination in compensation occurring prior to the 45–day period ending December 1, 1999.[3]

Plaintiff opposes defendant's motion on the grounds that his efforts to contact the OWD in May 1998 entitle him to waiver, estoppel or equitable tolling of administrative deadlines with respect to his non-promotion to GS–14, and that he has alleged a continuing violation. At the very least, plaintiff argues, there are genuine issues of fact that preclude entering summary judgment for defendant.

### A. Waiver, Estoppel or Equitable Tolling

As the D.C. Circuit has explained, the requirements for timely filing of administrative claims "are not jurisdictional prerequisites to suit, but are more 'like a statute of limitations, [which] is subject to waiver, estoppel, and equitable tolling.'" *Jarrell v. U.S. Postal Service,* 753 F.2d 1088, 1091 (D.C.Cir.1985) (quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). Waiver, of course, applies where a defendant "intentionally relinquishes or aban-

dons an affirmative defense." *Harris v. Secretary, U.S. Dep't of Veterans Affairs,* 126 F.3d 339, 343 n. 2 (D.C.Cir.1997). The doctrine of equitable estoppel, on the other hand, "prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from litigating in time," and the principle of equitable . tolling "allows a plaintiff to avoid the bar of the limitations period if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Currier v. Radio Free Europe/Radio Liberty, Inc.,* 159 F.3d 1363, 1367 (D.C.Cir.1998) (emphasis omitted).[4]

Plaintiff has submitted an affidavit describing his attempts to file an administrative complaint in 1998 concerning his non-promotion to GS–14. Pl.'s Opp., Ex. D. He states that in February 1998 he contacted the OWD about a rumor that one of the GS–14 positions under vacancy announcement # 98–91A "was posted for Vincent Amalfitano." *Id.* ¶ 6. The Deputy Chief of OWD, Harvey Lee, allegedly told plaintiff that he "could not file a complaint on a rumor" and "suggested that [plaintiff] wait for the application process to be complete before complain[ing]." *Id.* ¶ 7. In May 1998, plaintiff contacted the OWD "to file a complaint because . . . [his supervisor] se-

---

**3.** Defendant also moves for summary judgment on the ground that plaintiff's claims concerning non-promotion to GS–14 and discrimination in compensation were not raised in the administrative complaint. As defendant points out, plaintiff did not object when the FCC's Office of Workplace Diversity ("OWD") characterized his complaint as being limited to claims for discrimination with respect to the GS–15 position. Def.'s Mem. in Support of S.J., Ex. G. Nevertheless, given that plaintiff drafted the administrative complaint pro se and that it discusses plaintiff's failures to receive promotions in the past, the Court concludes that the alleged deficiencies in the administrative complaint do not bar plaintiff's claims.

**4.** Certain equitable bases for extending the 45–day time limit in an administrative context are identified at 29 C.F.R. § 1614.105(a)(2):

> The agency or the Commission shall extend the 45–day time limit . . . when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

lected Vincent Amalfitano and Bob Bentley for promotions to the GS–14 level to fill the vacancy announcement # 98–91A." *Id.* ¶ 8. According to plaintiff, "despite the fact that [plaintiff] had reason to know that [he] had been discriminated against, neither Jack Gravely, Chief of the OWD, or Harvey Lee would take [his] complaint." *Id.* ¶ 9. They "suggested that [plaintiff] let them look into the issue before [plaintiff] proceeded with a complaint." *Id.* ¶ 10. According to plaintiff, on June 3, 1998, Harvey Lee told plaintiff that the FCC was going to cancel the position awarded to Mr. Amalfitano, and that Mr. Lee had spoken to plaintiff's supervisors about plaintiff's potential to fill the vacancy. *Id.* ¶ 11. Copies of emails between plaintiff and Harvey Lee during May 1998 corroborate that plaintiff had discussions with Mr. Lee about his failure to receive timely promotions. *See* Pl.'s Opp., Exs. B and E.

■ Plaintiff therefore argues that he is entitled to equitable relief from administrative deadlines because he fulfilled his duty to contact an EEO counselor when he discussed the GS–14 vacancy with the OWD in May 1998. He contends that he was led to believe that an investigation was underway and that he relied on the advice of the OWD to his detriment. Further, plaintiff argues that his communications with the OWD satisfied the purpose of the "administrative initial contact" requirement by informing the OWD of his belief that he had been subject to a long-standing pattern of continuing discrimination. In advancing these arguments, plaintiff relies heavily on *Bowdre v. Richardson,* 131 F.Supp.2d 179 (D.D.C.2001), in which Judge Urbina of this Court found that a plaintiff could be excused for arguably

missing administrative deadlines because his lawyer had contacted defendant's EEO office within 45 days of the alleged discrimination—despite the facts that no formal administrative process flowed from that contact and no administrative complaint was filed until about one year after the first contact.

Defendant, on the other hand, contends that the discussions between plaintiff and the FCC's OWD office in May 1998 did not relate to a complaint about race discrimination, but rather to a complaint by plaintiff that there was a clerical error in vacancy announcement # 98–91A. A declaration from Jack Gravely of OWD affirms that plaintiff did not "indicate ... that he believed had been discriminated against on the basis of his race." Def.'s Reply, Ex. A ¶ 2. Rather, Mr. Gravely says, plaintiff complained that "applications of people living outside of Washington, D.C. were given favorable treatment based upon the applicants' personal friendships with supervisors." *Id.* Accordingly, Mr. Gravely (who is not himself an EEO counselor) did not refer plaintiff to an EEO counselor. *Id.* Mr. Gravely denies that he at any time "state[d] to [plaintiff] that he could not file an EEO complaint or discourage[d] him from doing so." *Id.* Morever, Mr. Gravely says that plaintiff never presented him with "a signed, dated, written complaint pertaining to race discrimination." *Id.*[5]

In his declaration, Harvey Lee states that during May 1998 plaintiff "raised concerns regarding his failure to be promoted to the GS–14 level and the fairness of his past performance ratings." Def.'s Reply, Ex. B ¶ 2. Plaintiff "did not indicate ... that he believed he was discriminated against on the basis of his race regarding

---

**5.** Exhibits to Mr. Gravely's declaration make clear that plaintiff should have known about the mechanics of the EEO complaint process, including relevant administrative deadlines, because this information is posted on the FCC's intranet and is printed in the employee handbook. *See id.* ¶ 4, Exs. 1 and 2.

the selection process for [vacancy announcement # 98–91A.]" *Id.* Rather, Mr. Lee says, the "thrust of [plaintiff's] concerns was that other employees were receiving favorable treatment based upon their personal friendships with their supervisors." *Id.* Mr. Lee says that he told plaintiff that he would "look into [plaintiff's] concerns" but that he did not refer plaintiff to an "EEO counselor or to OWD's EEO Program Manager at that time because [plaintiff] did not indicate . . . that he wanted to pursue a discrimination complaint." *Id.* Mr. Lee subsequently concluded that vacancy announcement # 98–91A failed to specify clearly that the selectee would be permitted to telecommute, or work from another location. *Id.* ¶ 3. Mr. Lee communicated his conclusion to the FCC human resources department and on June 4, 2002, advised plaintiff that the selection of Mr. Amalfitano would be canceled. *Id.* Mr. Lee, like Mr. Gravely, denies that he ever told plaintiff "that he could not file an EEO complaint or discourage[d] him from doing so." *Id.* In addition, Mr. Lee says that plaintiff never presented him with "a signed, dated, written complaint pertaining to race discrimination regarding his non-selection for VAN 98–91A." *Id.*

Plaintiff bears the "burden of pleading and proving in the district court any equitable reasons for his failure to meet the [forty-five]-day requirement." *Saltz v. Lehman,* 672 F.2d 207, 217 (D.C.Cir.1982). The Supreme Court has cautioned that

these equitable doctrines should be "applied sparingly." *Nat'l R.R. Passenger Corp. v. Morgan,* —— U.S. ——, 122 S.Ct. 2061, 2072, —— L.Ed.2d —— (2002); *see also Washington v. Washington Metro. Area Transit Auth.,* 160 F.3d 750, 753 (D.C.Cir.1998) (the "court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances" (quotation omitted)). Here, plaintiff has not demonstrated the requisite circumstances for application of equitable doctrines, nor has he presented any genuine issue of material fact.

It is clear enough that plaintiff had communications with the OWD about his failure to be promoted in a timely fashion, both in general and as specifically related to vacancy announcement # 98–91A. But any allegation that this non-promotion was a result of **race** discrimination is notably absent from the emails and affidavit that plaintiff has submitted. In plaintiff's emails to Harvey Lee, plaintiff alleges that there has been an "injustice," that he has been "treated unfairly," that he has "been discriminated against," and that there is a "serious . . . issue of discrimination." Pl.'s Opp., Ex. B (emails from May 1, 8, and 13, 2002). But the context of these emails provides no indication that the "injustice" of which plaintiff complained related to "discrimination" based upon race rather than "discrimination" based upon some other criteria, such as interpersonal factors or financial circumstances.[6]

---

**6.** Evidence in the record indicates that plaintiff has used the term "discrimination" to describe preferences based on characteristics other than race, sex, or age; and that plaintiff believed that such preferences motivated promotional decisions in the Audit Branch. In a January 1997 letter to an Audit Branch manager, for example, plaintiff noted:

Some employees have given their supervisor a very real and true outlook about how bad their financial situation is, plans to get

married, have a baby, move to a house or a bigger house all for the purposes of getting a raise or grade increase. I do not want to sound and appear to be unsympathetic about anyone's situation, however, I believe any promotions given based on these principals are promotions given and not earned. . . . This type of **discrimination** has extended to continuing education classes, seminars, and telecommunications forums.

Plaintiff describes conversations that he had with the OWD about "rumor[s] that one of the vacancy announcements # 98–91A for a GS–14 position was posted for Vincent Amalfitano." Pl.'s Opp., Ex. D ¶ 6. But plaintiff never states that he informed the OWD that he believed that race discrimination played a role in Mr. Amalfitano's selection. At most, plaintiff states that, at the time of his communications with the OWD, he "had reason to know that [he] had been discriminated against." *Id.* ¶ 6 (emphasis added). Plaintiff does not say that he believed he had been discriminated against on the basis of race, much less that he communicated any allegation of race discrimination to the OWD. Certainly, the OWD's failure to refer plaintiff to an EEO counselor does not warrant equitable relief from deadlines where plaintiff's complaints were insufficient to put the FCC on notice that he was asserting an equal employment violation.[7] *See Barber v. CSX Distribution Svcs.,* 68 F.3d 694, 702 (3d Cir.1995) (plaintiff's letter that did not explicitly or implicitly allege that age was the reason for unfair treatment did not constitute "protected conduct" to support retaliation claim because "[a] general complaint of unfair treatment does not translate into a charge of illegal age discrimination" (emphasis in original)).

Even if plaintiff had communicated an allegation of race discrimination to the OWD, he might not be entitled to relief from administrative deadlines. Plaintiff's contact with the OWD on this matter ceased in early June 1998. Nevertheless, he did not contact an EEO counselor until December 1, 1999, some 18 months later, and did not file his administrative complaint until January 27, 2000. Plaintiff provides no direct explanation for the extended time lag, during which he had no contact with either the OWD or an EEO counselor concerning his non-promotion. At most, plaintiff suggests that he did not pursue the matter further because he "infer[red] that the OWD was investigating his allegation of discrimination in promotion." Pl.'s Opp. at 9. The basis for plaintiff's inference is a May 22, 1998, email in which Harvey Lee states that he has requested some documents from plaintiff's supervisor and "will get back to [plaintiff] as soon as [OWD has] had a chance to look at all the information." Pl.'s Opp., Ex. E.

Plaintiff's lack of diligence cannot be excused. Contrary to the suggestion in his brief, plaintiff does not anywhere in his affidavit or other factual materials indicate that he believed that the OWD was conducting an on-going investigation with respect to his complaint after June 1998. To the contrary, the last event referenced in plaintiff's affidavit is a conversation with Mr. Lee on June 3, 1998, in which Mr. Lee informed plaintiff that Mr. Amalfitano's

---

Def.'s Mem. in Support of S.J., Ex. F at 372 (emphasis added); *see also id.* ("[I]n the Audits Branch while Jose was the Chief, applying for other positions and letting him know about it would get you a grade increase in your present position. I hope that you do not succumb to this type of blackmail or pressure . . . .").

7. The declarations of Harvey Lee and Jack Gravely, in which they deny that plaintiff ever alleged race discrimination with respect to vacancy announcement # 98–91A, are not inconsistent with plaintiff's carefully worded affidavit, in which plaintiff does not assert that he ever made such an allegation. Consequently, there is no disputed issue of fact. In any event, even setting aside the Lee and Gravely declarations, plaintiff's affidavit and other factual submissions fall far short of sustaining plaintiff's burden, and hence equitable relief from deadlines is not warranted. Moreover, contrary to plaintiff's urging, his failure to produce stronger evidence that he communicated an allegation of race discrimination to the OWD and that he otherwise acted diligently does not warrant further discovery from defendant.

promotion would be canceled and that Mr. Lee had spoken with plaintiff's supervisors about his potential to fill the vacancy. *See* Pl.'s Opp., Ex. D ¶ 12. Thus the conclusion to be drawn from plaintiff's factual materials is that after the June 3 conversation plaintiff should have reasonably believed that his complaint to the OWD concerning vacancy announcement # 98–981A was closed. Plaintiff's failure to take further action over the ensuing 18 months belies any suggestion that he exercised due diligence. *Bowdre,* 131 F.Supp.2d at 185 (the "plaintiff will not be afforded extra time to file without exercising due diligence, and the plaintiff's excuse must be more than a 'garden variety claim of excusable neglect.' *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).").

The Court does not agree with plaintiff that *Bowdre* provides a basis for relieving plaintiff from the administrative deadlines in this case. In *Bowdre,* plaintiff's lawyer met with defendant's EEO office during the 45–day period to assert plaintiff's claims for discrimination and retaliation. In that meeting, plaintiff's lawyer was expressly informed that plaintiff's complaints would be considered "pending" and that, because plaintiff himself had been barred from the premises, time limitations would be tolled and the normal time frame for processing an EEO claim would not apply until plaintiff returned to work. *Id.* at 182. Defendant's EEO office thus implicitly acknowledged that plaintiff had properly raised a discrimination claim and expressly instructed plaintiff that he need not take further action in order to preserve the claim. Accordingly, the court in *Bowdre* found that plaintiff had demonstrated "either affirmative misconduct or imparting of misinformation on the government's part that would justify a toll." *Id.* at 186.

Here, in contrast, plaintiff did not articulate his allegations in a manner that put the OWD on notice that he was seeking recourse for alleged race discrimination. The OWD's failure to direct plaintiff on how to pursue a race discrimination complaint was thus understandable and did not constitute affirmative misconduct. Moreover, plaintiff has not demonstrated that Harvey Lee's May 22, 1998, email, or any other conduct by the OWD, provided a sufficient justification for plaintiff to wait until December 1999 to take further action on his allegations. *Compare Jarrell,* 753 F.2d at 1092 (failure to contact EEO counselor "may be excused if it is the result of justifiable reliance on the advice of another government officer"). Accordingly, plaintiff has failed to carry his burden of showing entitlement to equitable relief from the administrative deadlines at issue. There is, moreover, no genuine issue of material fact that would preclude rejection of plaintiff's arguments for waiver, estoppel, or equitable tolling as a matter of law.

### B. Continuing Violation Theory

■ Plaintiff's remaining contention is that his claim for non-promotion to GS–14 and the related claim for discrimination in compensation are insulated from untimeliness because he has pled a continuing violation. At the time that this case was briefed and argued, the law in this Circuit was that a continuing violation is established where a plaintiff proves a "series of related [discriminatory] acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period." *Valentino v. U.S. Postal Service,* 674 F.2d 56, 65 (D.C.Cir.1982) (internal quotation and citation omitted). According to plaintiff, his Amended Complaint meets this standard because it identifies a series of related discriminatory promotional practices—in particular, the tailoring of promotional vacancies to fit the white employees that the FCC seeks to

promote. Plaintiff contends that the failure to promote him to GS–15 in 1999 was a result these practices, as was the failure to promote him to GS–14 in 1998. Because plaintiff's administrative complaint was timely with respect to the GS–15 non-promotion, plaintiff argues, he can reach back to capture the non-promotion to GS–14 in 1998, as well as any other promotional opportunities that he did not receive as a result of the FCC's discriminatory practices.

It is doubtful that plaintiff's theory could succeed under existing Circuit law. Any doubt has been removed, however, for the Supreme Court's recent decision in *National R.R. Corp. v. Morgan* is fatal to plaintiff's continuing violation theory. In *National R.R.*, the Court held that, under Title VII, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 122 S.Ct. at at 2066. As the Court explained, "[e]ach incident of discrimination ... constitutes a separate actionable 'unlawful employment practice' " for which a timely compliant must be filed. *Id.* at 2066. The Court rejected the contention that a claim based upon a discrete discriminatory act occurring outside the limitations period can be saved from untimeliness by alleging that the act is "plausibly or sufficiently related" to another discriminatory act for which a timely claim has been filed. *Id.* Rather, each discrete discriminatory act, such as a failure to promote, "starts a new clock for filing charges alleging that act." *Id.* at 2066–67.

Accordingly, under *National R.R.*, the fact that plaintiff may have timely pursued his administrative remedies with respect to the non-promotion to GS–15 does not salvage his claim for non-promotion to GS–14. The non-promotion to GS–14 was a "separate actionable 'unlawful employment practice' " for which plaintiff was required to pursue a remedy within the specified deadlines. It is of no import that the GS–14 and GS–15 vacancy announcements were allegedly both tailored with the discriminatory purpose of excluding plaintiff, under *National R.R.*, each non-promotion was still a discrete act of discrimination requiring timely pursuit of a remedy. Accordingly, because plaintiff did not timely contact an EEO counselor with respect to non-promotion to GS–14, his claim concerning the GS–14 vacancy fails even under his proffered continuing violation theory.[8]

## II. Non–Promotion to GS–15

■ Defendant moves to dismiss plaintiff's claim for non-promotion to GS–15 on the ground that plaintiff cannot make out a prima facie case. In order to establish a prima facie case for non-promotion, a plaintiff must allege, *inter alia,* that he applied for, and was qualified for, a position that he did not receive. *See Freeman v. Lewis,* 675 F.2d 398, 400 (D.C.Cir.1982). Here, defendant points out, it is undisputed that plaintiff did not apply for the GS–15 position. *See* Compl. at 1 (March 20, 2001) ("My promotion was denied for a GS–15 position because I did not apply for that position."); Def.'s Mem. in Support of S.J., Ex. C ("I did not apply for the GS–15 position"). Moreover, the August 1999 vacancy announcement for the GS–15 position specified that, to be eligible, candidates would need at least one year in grade at GS–14, whereas at the time of the posting, plaintiff had been in a GS–14 position for only one month. *See* Pl.'s Opp.,

---

8. In a final effort to bolster his position, plaintiff argues that certain documents related to promotion vacancies between 1997 and 1999 were destroyed or misplaced by the FCC. The Court fails to see how such alleged spoliation would preclude the entry of summary judgment on issues of timeliness.

Ex. D ¶ 5 (noting that plaintiff was employed at GS–14 starting on July 18, 1999); Amended Compl. ¶¶ 29–30 (GS–15 position was posted on August 25, 1999, and was awarded in September 1999). Accordingly, defendant argues, plaintiff's claim concerning non-promotion to GS–15 fails as a matter of law because plaintiff neither applied nor was qualified for the open position.

Plaintiff, in response, does not contend that he applied for the GS–15 position or that he met the one-year requirement specified in the vacancy announcement. Instead, he argues: 1) that his ineligibility for the GS–15 position was a direct result of the discriminatory failure to promote him to GS–14 in 1998; and 2) that the GS–15 vacancy announcement was tailored to exclude him from eligibility.

Neither of these arguments has merit. With respect to the first argument, it is well-settled that in assessing whether a Title VII violation has occurred the "proper focus is upon the time of the **discriminatory acts,** not upon the time at which the **consequences** of the acts became most painful." *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (quotation and citation omitted) (emphasis in original). "The emphasis is not upon the effects of earlier employment decisions; rather it 'is [upon] whether any present **violation** exists.'" *Id.* (emphasis in original) (quoting *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)). Here, the only identifiable discriminatory act is the failure to promote plaintiff to GS–14 in 1998; plaintiff's subsequent ineligibility for the GS–15 promotion in 1999 is just "a delayed, but inevitable consequence" of the non-promotion to GS–14, not an actionable violation in its own right. *Delaware State College,* 449 U.S. at 257–58, 101 S.Ct. 498. Plaintiff has not shown that he applied for and was qualified for

the GS–15 position at issue, and he cannot remedy this deficiency simply by linking the non-promotion to an earlier, time-barred claim.

Plaintiff's allegation that the GS–15 position was somehow illicitly crafted is also insufficient. 5 C.F.R. § 300.604(a) specifies that, subject to certain exceptions, "[c]andidates for advancement to a position at GS–12 and above must have completed a minimum of 52 weeks in positions no more than one grade lower (or equivalent) than the positions filled." Neither in his briefs nor at argument did plaintiff identify any reason why the 52-week requirement in 5 C.F.R. § 300.604(a) would not have applied to the GS–15 position at issue. That requirement is imposed throughout the federal government, not just upon the FCC. Accordingly, plaintiff's allegations that the GS–15 vacancy announcement was tailored to exclude him cannot sustain a claim of discrimination. Plaintiff's GS–15 non-selection claim therefore fails as a matter of law.

## CONCLUSION

Plaintiff did not comply with the relevant administrative deadlines governing his claims for failure to promote to GS–14 and discrimination in compensation. He has not met his burden of showing entitlement to equitable relief from those deadlines, nor has he alleged a viable continuing violation theory in light of the Supreme Court's recent *National R.R.* decision. Finally, his claim for failure to promote to GS–15 is substantively deficient. There are no genuine issues of material fact precluding the entry of summary judgment at this time or requiring further discovery. Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's claims.

A separate order has been issued on this date.

### ORDER

Upon consideration of Defendant's Motion for Summary Judgment, Plaintiff's Motion for Leave to File Supplemental Exhibits in Opposition to Defendant's Motion for Summary Judgment, the submissions of the parties, the hearing with the Court on February 13, 2002, and the entire record, it is hereby

ORDERED that plaintiff's motion for leave to file be and hereby is GRANTED; and it is further

ORDERED that defendant's motion for summary judgment be and hereby is GRANTED for the reasons stated in the Court's Memorandum Opinion issued on this date, and that defendant is awarded judgment on plaintiff's claims as a matter of law.