**Isaac KINLEY Plaintiff**

v.

**NORFOLK SOUTHERN RAILWAY COMPANY, et al Defendants**

**No. CIV.A.1999–130.**

United States District Court,
E.D. Kentucky
at Covington.

Sept. 26, 2002.

---

57. Dkt. # 22, Exhibit S, p. 61.

58. *Id.*

Gail M. Langendorf, Busald, Funk &
Zevely BSC, Florence, for Plaintiff.

Kathiejane Oehler, Middleton & Reut-
linger, Louisville, for Defendant.

## OPINION AND ORDER

BERTELSMAN, District Judge.

This matter is before the court on the motion of Defendants for summary judgment; the motion of Plaintiff for summary judgment based upon alleged discovery abuses; Plaintiff's objections to the Magistrate's Report and Recommendation; Plaintiff's motion to strike the affidavit of Gerhard A. Thelan; and Defendants' motion for a short extension of time. Oral argument on said motions was held August 29, 2002.

## STATEMENT OF FACTS [1]

Plaintiff Isaac Kinley ("Plaintiff" or "Kinley") brings this action for race discrimination and retaliation against his employer, the Cincinnati New Orleans and Texas Pacific Railway Company, the Norfolk Southern Railway Company, and Norfolk Southern Corporation (collectively "Defendants" or "the Railroad").

Plaintiff was hired by the Railroad in 1981 as a service attendant at its Danville, Kentucky rail yard. (Second Amended Complaint ¶ 20)(doc. 151); (Defendants' Motion for Summary Judgment, Exhibit A). In 1987, Plaintiff transferred to the Railroad's Ludlow, Kentucky location. (Second Amended Complaint ¶ 26). Plaintiff remains employed by the Railroad today, having received electrician's training and having been promoted at least twice during the 1990s.

On February 19, 1988, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Defendants' Motion for Sum-

---

1. As evidenced by the volume of the record, the history of the parties' employment relationship and this litigation is a lengthy one. For brevity's sake, however, the court here recites only those facts necessary for resolution of the pending motions.

mary Judgment, Exhibit A). In that charge, Plaintiff alleged that the Railroad discriminated against him on the basis of his race in denying him a promotion to a full-time foreman position in October 1987. (*Id.*) On December 12, 1988, the parties entered into a settlement agreement brokered by the EEOC, in which Plaintiff agreed not to institute a lawsuit based upon the allegations in his charge. (Defendants' Motion for Summary Judgment, Exhibit B). In return, the Railroad agreed to consider Plaintiff for future promotions and not to retaliate against him for having filed the charge. (*Id.*)

In June and December, 1989, the Railroad offered Plaintiff the opportunity to attend "carman" training as a step towards promotion to that position. (Second Amended Complaint, ¶¶ 41–47; Defendants' Motion for Summary Judgment, Exhibits C–E). Plaintiff initially indicated an interest in such training but ultimately declined the training for "personal" reasons. (Defendants' Motion for Summary Judgment, Exhibits E–F).

In October 1992, Plaintiff requested that he be considered for a Roundhouse Foreman position that had become available in Ludlow. (Second Amended Complaint ¶¶ 63–65; Plaintiff's Response to Defendants' Motion for Summary Judgment, Exhibit 21). Plaintiff, along with three other employees, was considered for the position. (Plaintiff's Response to Defendants' Motion for Summary Judgment, Exhibit 22). The Railroad awarded the position to an employee named Brian Bennett, stating that an applicable collective bargaining agreement required that the Railroad give preference for such positions to machinists and other craftspeople over non-craft servicemen such as Plaintiff. (Second Amended Complaint ¶ 64; Defendants' Motion for Summary Judgment, Exhibit G).

In early January 1993, the Railroad again offered Plaintiff the opportunity to attend carman training in Georgia, but Plaintiff declined due to the short notice. (Second Amended Complaint ¶¶ 75–77).

On January 19, 1993, Plaintiff filed another charge with the EEOC, alleging race discrimination and retaliation in the Railroad's selection of Bennett for the Roundhouse Foreman job. (Defendants' Motion for Summary Judgment, Exhibit G). On this charge, Plaintiff checked the box marked "continuing violation." (*Id.*) The Plaintiff indicated "11/13/92" as the latest date that discrimination took place. (*Id.*) The EEOC referred the charge to the Kentucky Commission on Human Rights ("KCHR") for processing. (*Id.*)

On March 17, 1993, Plaintiff filed a more detailed complaint of discrimination with the KCHR, also alleging race discrimination and retaliation in the selection of Bennett to the Roundhouse Foreman job. (Plaintiff's Response to Defendants' Motion for Summary Judgment, Exhibit 38). This filing also referred to foreman promotions denied Plaintiff "between 1987 and 1988." (*Id.*) After an investigation, the KCHR found probable cause to support Plaintiff's allegation of race discrimination, and the Railroad was so notified in late 1995. (*Id.*, Exhibits 35, 37). The KCHR probable cause memorandum and its notice letter to the Railroad indicate that the agency was informed of and considered the 1988 EEOC settlement agreement. (*Id.*)

On May 21, 1999, the EEOC issued Plaintiff a Right to Sue letter based on his 1993 charge, and Plaintiff instituted this action on June 29, 1999.

Plaintiff contends in this lawsuit that the Railroad has failed to promote him at various times since 1987 on account of his race and in retaliation for filing a charge of discrimination with the EEOC. (Second Amended Complaint ¶¶ 22, 51, 63, 65, 85,

124). Plaintiff's second amended complaint sets forth three causes of action: (1) racial discrimination pursuant to 42 U.S.C. § 1981 ("Section 1981"); (2) disparate treatment and disparate impact racial discrimination pursuant to 42 U.S.C. § 2000e *et seq.* ("Title VII"); and (3) retaliation pursuant to Title VII. (*See* doc. 151).[2]

## ANALYSIS

### I. SECTION 1981

#### A. *Statute of Limitations*

■ Plaintiff's first count for alleged racial discrimination arises under 42 U.S.C. § 1981. Originally enacted in 1870, Section 1981 provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens ...." 42 U.S.C. § 1981. Section 1981 thus prohibits racial discrimination in the making of contracts and affords a federal remedy against racial discrimination in private employment. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

In 1989, however, the Supreme Court held that Section 1981 applied only to racial discrimination in the formation of a contract and not to post-formation conduct. *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Thus, the statute was held not to cover discriminatory termination of employment and other discriminatory actions occurring after the employment relationship was formed. *Id.* at 177–78, 109 S.Ct. 2363.

·In the wake of *Patterson,* Congress passed the Civil Rights Act of 1991,

amending Section 1981 by adding new sections to define the term "make and enforce" contracts to include:

> the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(b). This amendment effectively reversed *Patterson* and thus permitted the use of Section 1981 to challenge alleged race discrimination, not only in the formation of the employment relationship, but in post-formation employment actions. In so doing, Congress created "new substantive liabilities." *Young v. Sabbatine,* No. 97–5169, 1998 WL 136559, at *3 (6th Cir. Mar.19, 1998)(quoting *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994)). *See also Harris v. Allstate Insurance Co.,* 300 F.3d 1183, 1186–87 (10th Cir.2002)("The Civil Rights Act of 1991 ... essentially created a new cause of action to challenge an employer's discriminatory post-formation conduct.").

This review of the history of Section 1981 is essential to the present analysis because Defendants argue that Plaintiff's claims for race discrimination under this statute are largely barred by the statute of limitations.

Section 1981 does not contain its own statute of limitations. In *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 661, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), the Supreme Court held that the state statute of limitations for personal injury actions should be borrowed for Section 1981 claims. The Sixth Circuit thus held that the limitations period for Section 1981 actions in Kentucky was the state's one-year

---

**2.** Plaintiff's claims under the Kentucky Civil Rights Act, KRS 344.040 *et seq.* set forth in his second amended complaint were previously dismissed. (*See* doc. 154) Plaintiff's

motion for leave to file a third amended complaint asserting additional causes of action was denied. (*See* doc. 219)

limitation period for personal injuries. *Collard v. Kentucky Bd. Of Nursing,* 896 F.2d 179, 182 (6th Cir.1990). Defendant urges for the application of the one-year limitation period.

Yet, this issue is not so easily resolved. On December 1, 1990, Congress passed 28 U.S.C. § 1658, a general statute of limitations applying to all subsequently enacted federal statutes:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of enactment of this section may not be commenced later than *4 years* after the cause of action accrues.

28 U.S.C. § 1658 (emphasis added). Plaintiff argues that his Section 1981 claims are thus subject to the 4-year statute of limitations created by § 1658.

This court's review of relevant case law reveals that this issue—i.e., what statute of limitations applies to Section 1981 claims in light of its amendment by the Civil Rights Act of 1991 and the passage of 28 U.S.C. § 1658—is the subject of lively debate among the federal courts. *See Harris, supra,* 300 F.3d at 1187 (noting that the federal courts "have split in determining which statute of limitations applies to suits brought under the amended version of § 1981"). *See also Jones v. R.R. Donnelley & Sons Co.,* 305 F.3d 717 (7th Cir. 2002) (noting division among circuits and holding that § 1658 does not apply to Section 1981 claims).

The Third Circuit, in 2000, discussed in detail three approaches that courts have taken. *Zubi v. AT&T Corp.,* 219 F.3d 220, 222 (3d Cir.2000). Summarized briefly, these approaches are: (1) that claims created by the 1991 amendments to Section 1981 ("post-formation" claims) should be subject to the new 4-year statute of limitations, but all other claims remain subject to the state "borrowed" period; (2) that *all* Section 1981 claims accruing after the passage of 28 U.S.C. § 1658 are now subject to the 4-year limitations period; and (3) that the 1991 Act merely amended an existing law and was not a new enactment for purposes of 28 U.S.C. § 1658, and thus all Section 1981 claims remain subject to the state "borrowed" limitations period. *Id.*

The Sixth Circuit has considered this question but has not resolved it. *Young v. Sabbatine,* No. 97–5169, 1998 WL 136559, at *3 (6th Cir. Mar.19, 1998). *Sabbatine* suggests, however, that the Sixth Circuit may be inclined to apply the new 4-year limitations period to Section 1981 claims. There, the district court had dismissed the plaintiff's Section 1981 claim as untimely under the 1-year statute of limitations borrowed from Kentucky. The Sixth Circuit reversed this ruling and remanded the case stating that the district court should consider the application of the 4-year limitation period in § 1658.[3]

Several district courts within the Sixth Circuit have since held that the 4-year limitations period of § 1658 should now apply to Section 1981 claims. *See Brown v. Jenny Craig Weight Loss Centre,* No. C–1–97–0211, 2000 WL 989918 (S.D.Ohio 2000); *Miller v. Federal Express Corp.,* 56 F.Supp.2d 955, 964–65 (W.D.Tenn.1999); *Rodgers v. Apple South, Inc.,* 35 F.Supp.2d 974, 976–77 (W.D.Ky.1999). *But see Coleman v. Shoney's, Inc.,* 145 F.Supp.2d 934, 938 (W.D.Tenn.2001).

---

**3.** On remand, the district court concluded that 28 U.S.C. § 1658 did extend the statute of limitations for Section 1981 claims to four years. *See Young v. Sabbatine,* No. 99–6336, 2000 WL 1888672, at *2 n. 2 (6th Cir. Dec.19, 2000) (so noting, and holding that the Sixth Circuit had no jurisdiction to consider the issue on this second appeal because the employer did not file a notice of cross-appeal to preserve the issue).

This court is persuaded that the 4–year statute of limitations created by 28 U.S.C. § 1658 should apply to Plaintiff's Section 1981 claim, for the reasons outlined by other district courts within this circuit and in view of the Sixth Circuit's treatment of the issue in *Sabbatine.*

Therefore, the court concludes that Plaintiff may premise his Section 1981 claim on adverse employment actions that occurred on or after June 29, 1995, the four-year mark preceding the date he filed this lawsuit.[4] Any claims premised on actions prior to that date are time-barred for purposes of Section 1981.[5]

Therefore, Plaintiff's Section 1981 claim is limited to challenging the decisions by the Railroad with respect to the three Mechanical Supervisor positions filled by the Railroad in Cincinnati, Ohio in October 1999 and March 2000, by Jennifer Bailey, Mike Chambers, and Walt Davis, respectively.

### B. *Continuing Violation Doctrine*

■ Plaintiff argues that he may nonetheless recover under Section 1981 for acts of alleged racial discrimination or retaliation occurring prior to June 29, 1995 because these otherwise untimely claims are part of a "continuing violation" and thus not barred by the limitations period.

The Sixth Circuit has applied the continuing violation doctrine, developed under Title VII, to discrimination claims brought under Section 1981. *See, e.g., Evans v. Toys R Us, Inc.,* No. 99–3233, 2000 WL 761803, at *6–7 (6th Cir. June 2, 2000); *Harper v. BP Exploration & Oil, Inc.,* No.

96–5854, 1998 WL 45487, at *4 (6th Cir. Jan.27, 1998). The Sixth Circuit has traditionally limited this equitable exception to the statute of limitations to two categories of claims:

> The first category arises where there is some evidence of present discriminatory activity giving rise to a claim of continuing violation such as where an employer continues to presently imposes [*sic* ] disparate work assignments or gives unequal pay for equal work.... The second category of continuing violation arises where there has occurred a longstanding and demonstrable policy of discrimination. This requires a showing by a preponderance of the evidence that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure.

*Burzynski v. Cohen,* 264 F.3d 611, 618 (6th Cir.2001) (internal quotations and citations omitted). *See also Evans, supra,* at *6.

In *Burzynski,* the Sixth Circuit rejected the application of the continuing violation doctrine to save claims by the plaintiff that he had been discriminated against in his non-selection for various positions, only one of which was the subject of a timely filing. *Id.* at 619. The Court stated: "Simply alleging discrete acts of non-selections is not sufficient to establish a continuing violation." *Id.* Under this reasoning, Plaintiff's claims for failure to promote arising outside the 4–year period identified above would not be saved by the continuing violation doctrine.

---

**4.** Although Plaintiff filed EEOC charges alleging racial discrimination under Title VII, the Supreme Court has held that the running of the statute of limitations on a Section 1981 claim is not tolled by the timely filing of an EEOC charge, nor is it tolled pending the utilization of Title VII administrative procedures. *Johnson v. Railway Express Agency,*

*Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

**5.** As noted below, however, evidence of alleged discrimination occurring prior to this date may still be admissible, although events prior to that date are not themselves actionable.

A recent decision of the Supreme Court confirms this conclusion. In *National Railroad Passenger Corp. v. Morgan,* — U.S. ——, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court considered whether the continuing violation doctrine would excuse a plaintiff's failure to file a timely administrative charge under Title VII to challenge alleged discriminatory acts which were related to employment actions that were the subject of a timely charge. The Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 2072. Such discrete acts, the Court said, are easy to identify as separate, actionable unlawful employment practices, and thus each such incident "starts a new clock" running on the limitations period. *Id.* at 2073. The Court specifically cited "failure to promote" as an example of such a discrete act. *Id.*

While *Morgan* arises in the context of Title VII's administrative exhaustion context, this court believes its construction of the continuing violation doctrine is equally applicable to the limitations period for Section 1981 claims. The Supreme Court has elsewhere held that the Title VII administrative charge filing period is functionally equivalent to a statute of limitations. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393–95, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). As already noted, the continuing violation doctrine has been applied equally to discrimination claims under Title VII, Section 1981, and other discrimination statutes.

Indeed, the Sixth Circuit has now applied *Morgan* in the ADEA context to limit use of the continuing violation doctrine to failure to promote claims. *See Sherman v. Chrysler Corp.,* No. 00–2287, 47 Fed.Appx. 716 (6th Cir.2002) (noting that *Morgan* "greatly limited the viability of a continuing violations theory"). In the one other Sixth Circuit case that this court has found addressing *Morgan,* the Sixth Circuit remarked that the "continuing violation doctrine has been cabined" by the Supreme Court's decision. *Tenenbaum v. Caldera,* 45 Fed.Appx. 416 (6th Cir.2002).[6] Other federal courts have applied *Morgan* to bar the use of the continuing violation doctrine to salvage untimely failure to promote claims. *See Kaster v. Safeco Insurance Co. of America,* 212 F.Supp.2d 1264, 1269 (D.Kan.2002); *Jarmon v. Powell,* 208 F.Supp.2d 21, 28–29 (D.D.C.2002).

Therefore, because Plaintiff's discrimination claims for failure to promote are premised upon separate, discrete acts, the continuing violation doctrine does not apply to excuse him from complying with Section 1981's limitations period.[7]

## II. *TITLE VII*

### A. *Title VII's Administrative Exhaustion Scheme*

Title VII requires that a plaintiff file a charge of discrimination with the EEOC and receive from that agency a Right to Sue notice before bringing suit in court. 42 U.S.C. § 2000e–5(e)(1). In a state that has an entity with the authority to handle charges of discrimination, as does Ken-

---

**6.** While noting that *Morgan* would have implications for existing Sixth Circuit law on the continuing violation doctrine, the Court concluded that it did not need to address exactly what those implications were because the plaintiff could not make out a viable continuing violation even under the "old, more liberal standard" of pre-*Morgan* law. *Id.* at *3.

**7.** The Supreme Court expressly noted in *Morgan* that while untimely claims based upon discrete acts occurring outside the limitations period may not form the basis for recovery, a plaintiff may still seek to use such acts as "background evidence in support of a timely claim." *Morgan,* — U.S. at ——, 122 S.Ct. at 2072.

tucky, the plaintiff must file his charge within 300 days of the alleged unlawful employment practice. *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002)(discussing Title VII charge filing scheme). A claim is time barred if a charge is not filed within these time limits. *Id.* The plaintiff generally must bring suit in court within 90 days of his receipt of the Right to Sue notice. *See* 42 U.S.C. § 2000e–5(f)(1).

■ Federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an administrative charge or the claim can reasonably be expected to grow out of a timely filed charge. *Jones v. Sumser Retirement Village,* 209 F.3d 851, 853 (6th Cir.2000); *Abeita v. Trans-America Mailings, Inc.,* 159 F.3d 246, 254 (6th Cir.1998). The charge must describe generally the action or practices complained of in order to allow the agency to attempt to conciliate the matter and to put the defendant on notice of the nature of the claims. *Jones,* 209 F.3d at 853.

### B. *The 1988 EEOC Charge and Settlement Agreement*

Defendants argue that the negotiated EEOC settlement agreement bars Plaintiff from pursuing his failure to promote claims asserted in his 1988 charge. Plaintiff counters that Defendants have breached that agreement by failing to consider him for promotional opportunities and by retaliating against him.

■ The Sixth Circuit has held that a plaintiff alleging a breach of an EEOC settlement agreement must comply with Title VII's usual administrative exhaustion scheme prior to bringing a court action. *Parsons v. Yellow Freight System, Inc.,* 741 F.2d 871, 873–74 (6th Cir.1984). This includes filing a timely charge that encompasses the pertinent subject matter of his

claim and receiving a Right to Sue letter based upon that charge. *Id.*

■ The court finds that Plaintiff's 1993 EEOC/KCHR filing does not satisfy this administrative exhaustion requirement as it relates to the 1988 settlement agreement because it was untimely. Plaintiff acknowledges that he was required to file a new charge once he was on notice of actions by the Railroad that he believed to be in breach of the settlement agreement. (Plaintiff's Response to Defendants' Motion for Summary Judgment at 21). Plaintiff argues that it was the promotion of Bennett to the Roundhouse Foreman position in late 1992 that first caused him to believe that the 1988 agreement had been breached.

However, Plaintiff's Second Amended Complaint clearly alleges that the Railroad's conduct in denying him training in 1989 was retaliatory and part of an "ongoing effort" to deny him promotional opportunities. (Second Amended Complaint ¶ 51). He also alleges that the Railroad's alleged refusal to allow him to attend electrician's school in July 1991 was also retaliatory. (Second Amended Complaint ¶¶ 59–62). If true, either of these actions by the Railroad would have constituted a breach of the EEOC settlement agreement. However, Plaintiff did not file his next EEOC charge until January 19, 1993, more than 300 days after these alleged actions. Even reading the EEOC/KCHR charges together and liberally, therefore, they cannot preserve the allegations originally raised in Plaintiff's 1988 EEOC charge because Plaintiff failed to make the Railroad's alleged breach of the settlement agreement the subject of a timely administrative charge.

Therefore, Defendants' motion for summary judgment is granted as to all claims of racial discrimination arising before December 12, 1988, the date of the EEOC

settlement agreement, and Plaintiff may not premise his causes of action for recovery an actions occurring prior to that date.

### C. *The Scope of the 1993 Charge*

■ Plaintiff's 1993 EEOC charge was, of course, timely as to the promotion of Bennett to the Roundhouse Foreman position. The scope of that charge, even reading the EEOC charge in conjunction with the KCHR filing, is limited to Plaintiff's claim that the Bennett promotion was racially discriminatory and that Plaintiff had been retaliated against for filing his 1988 charge. (Defendants' Motion for Summary Judgment, Exhibit G; Plaintiff's Response to Defendants' Motion for Summary Judgment, Exhibit 38).

At trial, therefore, Plaintiff's disparate treatment Title VII claim is limited to his claim that (1) his non-selection for the foreman position awarded to Bennett in late 1992 was racially discriminatory and/or retaliatory, and (2) to any claim of retaliation occurring between the filing of that charge and the Second Amended Complaint.[8]

### D. *Disparate Impact*

Finally, the court concludes that Defendants' motion for summary judgment as to Plaintiff's Title VII disparate impact claim is well-taken.

■ As the Sixth Circuit has explained, Title VII proscribes "not only overt discrimination but also practices that are fair in form, but discriminatory in operation." *Kovacevich v. Kent State University,* 224 F.3d 806, 830 (6th Cir.2000)(quoting *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971)).

In order to establish a *prima facie* case of disparate impact discrimination, the plaintiff must identify and challenge a specific employment practice, and then show an "adverse effect" on a protected class by offering statistical evidence of a kind or degree sufficient to show that the practice in question caused the adverse effect in question. *Id.*

■ Plaintiff has not produced evidence to support even a *prima facie* case for this claim. Putting aside the debated question of whether Plaintiff has identified a "specific" policy, he has not come forward with any evidence, statistical or otherwise, that any policy of the Defendants has an adverse impact generally on African–American employees. Plaintiff's only evidence relates to his own non-selection for various positions. The court finds, therefore, that there is no triable issue on Plaintiff's disparate impact Title VII claim.

Therefore, the parties having been heard, and the court being duly advised,

**IT IS ORDERED** as follows:

1) That the motion of Defendants for summary judgment (doc. 244) be, and it is hereby, **granted in part and denied in part,** consistent with this opinion.

For the sake of clarity and so that the parties can plan an efficient presentation of evidence at trial, this opinion leaves the following claims for trial:

(a) Under Section 1981, Plaintiff may proceed with his claims regarding the three Mechanical Supervisor positions filled by the Railroad in Cincinnati, Ohio in October 1999 and March 2000, by Jennifer

---

8. Plaintiff was not required to file another EEOC charge to cover alleged retaliation occurring after the filing of his 1993 charge. *See Ang v. Procter and Gamble Co.,* 932 F.2d 540, 546–47 (6th Cir.1991). The post-charge retaliation that may properly form the basis

for Plaintiff's Title VII retaliation claim at trial would include the claims based upon the positions filled by Ron Spradlin, Jennifer Bailey, Mike Chambers, and Walt Davis, all of which occurred after the date Plaintiff filed his 1993 charge.

Bailey, Mike Chambers, and Walt Davis, respectively;

(b) Under Title VII (race discrimination), Plaintiff may proceed with his claim that his non-selection for the foreman position awarded to Bennett in late 1992 was racially discriminatory; and

(c) Under Title VII (retaliation), Plaintiff may proceed with his claim that his non-selection for the foreman position awarded to Bennett in late 1992 was retaliatory, and with any claim of retaliation based upon adverse employment actions occurring between January 19, 1993 and the filing of the Second Amended Complaint.

2) That the motion of Plaintiff for summary judgment based upon alleged discovery abuses (doc. 240) be, and it is hereby, **denied;**

3) That Plaintiff's objections to the Magistrate's Report and Recommendation (doc. 259) be, and are hereby, **overruled;**

4) That the Report and Recommendation of the Magistrate Judge (doc. 270) be, and it is hereby, **adopted** as the findings of fact and conclusions of law of this court;

5) That Plaintiff's motion to strike the affidavit of Gerhard A. Thelan (doc. 271) be, and it is hereby, **denied;**

6) That Defendants' motion for a short extension of time (doc. 275) be, and it is hereby, **denied as moot.**

7) That in light of the reduced number of claims, each side shall have **seven (7) hours** to present its case at trial.